**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SHIVA STEIN, :
:
      Plaintiff, : Civil Action No. 1:22-cv-01560
:
v. :
: **COMPLAINT FOR VIOLATIONS OF**
ACTIVISION BLIZZARD, INC., REVETA : **SECTIONS 14(a) AND 20(a) OF THE**
BOWERS, ROBERT CORTI, HENDRIK : **SECURITIES EXCHANGE ACT OF**
HARTONG III, BRIAN KELLY, BOBBY : **1934**
KOTICK, BARRY MEYER, ROBERT :
MORGADO, PETER NOLAN, DAWN : **JURY TRIAL DEMANDED**
OSTROFF, and CASEY WASSERMANM :
:
      Defendants. :

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Activision Blizzard, Inc. ("Activision or the "Company") and the members Activision board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Activision by Microsoft Inc. ("Microsoft") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on February 18, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Anchorage Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Microsoft, will merge with and into Activision with Activision surviving the merger and becoming a wholly owned subsidiary of Microsoft (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of the companies entered into merger dated January 18, 2022 (the "Merger Agreement"), each Activision common share issued and outstanding will be converted into the right to receive $95.00 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Activision stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Allen & Company LLC ("Allen & Company") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Activision stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the closing of the Proposed Transaction will occur at the offices of Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, which is located in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Activision common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Reveta Bowers has served as a member of the Board since January 2018.

11. Individual Defendant Robert Corti has served as a member of the Board since December 2003.

12. Individual Defendant Hendrik Hartong III has served as a member of the Board since July 2015.

13. Individual Defendant Brian Kelly has served as a member of the Board since 1991 and is the Chairman of the Board.

14. Individual Defendant Bobby Kotick has served as a member of the Board since July 2008 and is also the Chief Executive Officer of the Company.

15. Individual Defendant Barry Meyer has served as a member of the Board since January 2014.

16. Individual Defendant Robert Morgado has served as a member of the Board since February 1997.

17. Individual Defendant Peter Nolan has served as a member of the Board since October 2013.

18. Individual Defendant Dawn Ostroff has served as a member of the Board since June 2020.

19. Individual Defendant Casey Wasserman has served as a member of the Board since July 2015.

20. Defendant Activision is incorporated in Delaware and maintains its principal offices at 3100 Ocean Park Blvd., Santa Monica, California 90405. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "ATVI."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.** **The Proposed Transaction**

23. Activision, together with its subsidiaries, develops and publishes interactive entertainment content and services in the Americas, Europe, the Middle East, Africa, and the Asia Pacific. The Company operates through three segments: Activision Publishing, Inc.; Blizzard

4

Entertainment, Inc.; and King Digital Entertainment. It develops and distributes content and services on video game consoles, personal computers, and mobile devices, including subscription, full-game, and in-game sales, as well as by licensing software to third-party or related-party companies that distribute Activision and Blizzard products. The Company also maintains a proprietary online gaming service, Battle.net that facilitates digital distribution of content, online social connectivity, and the creation of user-generated content. In addition, it operates esports leagues and offer digital advertising content; and provides warehousing, logistics, and sales distribution services to third-party publishers of interactive entertainment software, as well as manufacturers of interactive entertainment hardware products. The Company's key product franchises include Call of Duty, World of Warcraft, Diablo, Hearthstone, Overwatch, and Candy Crush. It serves retailers and distributors, including mass-market retailers, consumer electronics stores, discount warehouses, and game specialty stores through third-party distribution and licensing arrangements. Activision is headquartered in Santa Monica, California.

24. On January 18, 2022, Activision and Microsoft jointly announced that they had entered into a proposed transaction:

> **REDMOND, Wash. and Santa Monica, Calif. – Jan. 18, 2022** – With three billion people actively playing games today, and fueled by a new generation steeped in the joys of interactive entertainment, gaming is now the largest and fastest-growing form of entertainment. Today, Microsoft Corp. (Nasdaq: MSFT) announced plans to acquire Activision Blizzard Inc. (Nasdaq: ATVI), a leader in game development and interactive entertainment content publisher. This acquisition will accelerate the growth in Microsoft's gaming business across mobile, PC, console and cloud and will provide building blocks for the metaverse.
>
> Microsoft will acquire Activision Blizzard for $95.00 per share, in an all-cash transaction valued at $68.7 billion, inclusive of Activision Blizzard's net cash. When the transaction closes, Microsoft will become the world's third-largest gaming company by

revenue, behind Tencent and Sony. The planned acquisition includes iconic franchises from the Activision, Blizzard and King studios like "Warcraft," "Diablo," "Overwatch," "Call of Duty" and "Candy Crush," in addition to global eSports activities through Major League Gaming. The company has studios around the world with nearly 10,000 employees.

Bobby Kotick will continue to serve as CEO of Activision Blizzard, and he and his team will maintain their focus on driving efforts to further strengthen the company's culture and accelerate business growth. Once the deal closes, the Activision Blizzard business will report to Phil Spencer, CEO, Microsoft Gaming.

"Gaming is the most dynamic and exciting category in entertainment across all platforms today and will play a key role in the development of metaverse platforms," said Satya Nadella, chairman and CEO, Microsoft. "We're investing deeply in world-class content, community and the cloud to usher in a new era of gaming that puts players and creators first and makes gaming safe, inclusive and accessible to all."

"Players everywhere love Activision Blizzard games, and we believe the creative teams have their best work in front of them," said Phil Spencer, CEO, Microsoft Gaming. "Together we will build a future where people can play the games they want, virtually anywhere they want."

"For more than 30 years our incredibly talented teams have created some of the most successful games," said Bobby Kotick, CEO, Activision Blizzard. "The combination of Activision Blizzard's world-class talent and extraordinary franchises with Microsoft's technology, distribution, access to talent, ambitious vision and shared commitment to gaming and inclusion will help ensure our continued success in an increasingly competitive industry."

Mobile is the largest segment in gaming, with nearly 95% of all players globally enjoying games on mobile. Through great teams and great technology, Microsoft and Activision Blizzard will empower players to enjoy the most-immersive franchises, like "Halo" and "Warcraft," virtually anywhere they want. And with games like "Candy Crush," Activision Blizzard's mobile business represents a significant presence and opportunity for Microsoft in this fast-growing segment.

> The acquisition also bolsters Microsoft's Game Pass portfolio with plans to launch Activision Blizzard games into Game Pass, which has reached a new milestone of over 25 million subscribers. With Activision Blizzard's nearly 400 million monthly active players in 190 countries and three billion-dollar franchises, this acquisition will make Game Pass one of the most compelling and diverse lineups of gaming content in the industry. Upon close, Microsoft will have 30 internal game development studios, along with additional publishing and esports production capabilities.
>
> The transaction is subject to customary closing conditions and completion of regulatory review and Activision Blizzard's shareholder approval. The deal is expected to close in fiscal year 2023 and will be accretive to non-GAAP earnings per share upon close. The transaction has been approved by the boards of directors of both Microsoft and Activision Blizzard.
>
> **Advisors**
>
> Goldman Sachs & Co. LLC is serving as financial advisor to Microsoft and Simpson Thacher & Bartlett LLP is serving as legal counsel. Allen & Company LLC is acting as financial advisor to Activision Blizzard and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel.

\* \* \*

25. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Activision's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

26. On February 18, 2022, Activision filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Activision Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by Activision management and relied upon by Allen & Company in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Activision management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Management Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBIT (Pre-SBC) and Adjusted EBITDA, but fails to provide line items used to calculate these metrics and/or a

reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. The Company also included a table reflecting selected metrics included in the Long-Range Plan: (i) Revenue, which excludes the impact of deferrals from Activision's accounting treatment under GAAP on certain of the Company's online-enabled products; and (ii) Operating Income, which was calculated in a manner consistent with EBIT (Pre-SBC). The Proxy fails to disclose the assumptions underlying these two metrics.

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Allen & Company's Financial Analysis*

33. With respect to Allen & Company's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Allen & Company in the analysis.

34. With respect to Allen & Company's *Selected Precedent Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Allen & Company in the analysis.

35. With respect to Allen & Company's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the implied terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 2.25% to 2.75%; and (iii) the inputs and assumptions underlying the range of discount rates ranging from 6.50% to 8.00%.

36. With respect to Allen & Company's analysis of publicly available Wall Street research analysts' forward stock price targets, the Proxy Statement fails to disclose: (i) the research analysts observed; and (ii) the high target price published by each analyst.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

37. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Allen & Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

43. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Activision within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Activision, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Activision, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Activision, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

48. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: February 24, 2022                                         **MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*